IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DEDRA HARRIS, | ) Civil No.: 3:10-cv-06239-JE |
| Plaintiff, | ) FINDINGS AND |
| | ) RECOMMENDATION |
| v. | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

Rory Joseph Linerud
Linerud Law Firm
P.O. Box 1105
Salem, OR 97308

    Attorney for Plaintiff

S. Amanda Marshall, U.S. Attorney
Adrian L. Brown, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204

FINDINGS AND RECOMMENDATION – 1

       Jordan D. Goddard
       Special Asst. U.S. Attorney
       Office of the General Counsel
       Social Security Administration
       701 5th Avenue, Suite 2900 M/S 221 A
       Seattle, WA 98104-7075

            Attorneys for Defendants

JELDERKS, Magistrate Judge:

     Plaintiff Dedra Harris brings this action against the Commissioner of Social Security (the Commissioner) pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a decision denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). Plaintiff seeks an Order reversing the decision of the Commissioner and remanding the action to the Social Security Administration (the Agency) for an award of benefits. In the alternative, Plaintiff asks that the action be remanded for further proceedings.

    For the reasons set out below, the Commissioner's decision should be affirmed.

## Procedural Background

    On May 15, 2001, Plaintiff filed applications for SSI and DIB, which were denied initially and upon reconsideration. A hearing was held on August 6, 2002 and on April 29, 2004 an unfavorable decision was issued by the Administrative Law Judge (ALJ), who determined that Plaintiff was "not disabled" and was able to return to her prior relevant work as a housecleaner. That decision was not appealed and its findings are, therefore, final.

    Plaintiff again filed applications for SSI and DIB on August 31, 2004, alleging that she had been disabled since January 31, 2000. After the claims were denied initially and upon review, Plaintiff timely requested a hearing before an ALJ.

FINDINGS AND RECOMMENDATION – 2

On May 16, 2007, a hearing was held before ALJ Thomas Tielens. The hearing was continued to September 17, 2007 in order to obtain additional evidence. On December 26, 2007, ALJ Tielens issued a decision finding that Plaintiff was not disabled within the meaning of the Act. That decision became the final decision of the Commissioner on June 3, 2010, when the Appeals Council denied Plaintiff's request for review. In the present action, Plaintiff is seeking review of the December 26, 2007 decision.

## Factual Background

Plaintiff was born on February 14, 1964 and was 43 years old at the time of the hearing before the ALJ. Plaintiff attended school through the ninth grade and completed vocational training in nursing and as a chiropractic assistant. Plaintiff has past relevant work experience as a fast food restaurant cashier, a maid/housecleaner and a nurse's aide/caregiver.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled.

If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

FINDINGS AND RECOMMENDATION – 3

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled. If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five. 20 C.F.R. § 404.1520(e).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant. <u>Tackett</u>, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. <u>Id.</u>

## Medical Record

The ALJ addressed the relevant portions of the extensive medical record in his decision and the parties have cited particular portions of the record only in the context of their arguments. In this Findings and Recommendation, I also will address only the medical evidence that is relevant to the parties' arguments.

## Testimony

1. **Plaintiff**

Plaintiff testified as follows at the hearings before the ALJ:

Plaintiff's fibromyalgia caused pain in every muscle of her body depending on the type of activity she was trying to perform and left her unable to complete tasks such as sweeping and washing dishes.

In September of 2005 she was diagnosed with pancreatitis and had 60 percent of her pancreas removed. As a result, digestion was difficult and she experienced a lot of nausea and pain.

During the two months she was in the hospital for treatment of her pancreatitis, Plaintiff experienced a heart attack and was treated for that in the hospital. Between October 2005 and May 2007, she experienced a lot of chest pain, dizziness and breathlessness.

In May of 2007, she had a heart stent placed. Although the stent improved how she felt, she still became fatigued, dizzy, nauseated and breathless and had difficulty "being able to

perform where I need to." Plaintiff's various medications caused cramping and nausea and her pain medications could make her feel "drugged" and "confused."

Plaintiff had been smoking several packs of cigarettes a day but three months prior had reduced her usage to less than a pack a day and had stopped using marijuana.

When Plaintiff had worked as a housekeeper she and her sister would clean an average of twelve houses a week. In 2004, Plaintiff could clean one house. She then had to stop doing housecleaning work completely. She denied cleaning houses as recently as 2007 as was referenced in May 2007 chart notes from OHSU's Cardiology Clinic.

Plaintiff's daily schedule consisted of getting up, taking her medications, trying to get showered, or at least dressed, taking the rest of her medications as soon as she could get herself to eat and maybe trying to do a few things around the house. Some days she was too sick to take a shower and any time she had to do something outside the house she had to plan ahead and not take any medications beforehand. Her dizzy spells and digestive problems were less likely to occur when she didn't take her medications. Her medications also caused vomiting and the sudden urge to use the restroom. Her focus and concentration was also affected by her medications and "a factor of depression." Her symptoms would prevent her from going to a "9:00 to 5:00" job and being functional the whole time.

2. **Vocational Expert's Testimony**

The ALJ posed a vocational hypothetical describing an individual with Plaintiff's age, education and vocational background who could perform light work, who was limited to simple tasks because of the side effects of medications and possible distractions of pain, and should only have occasional public and co-worker interaction. The VE testified that such an individual could perform Plaintiff's past relevant work as a maid/housecleaner. When the ALJ added the

FINDINGS AND RECOMMENDATION – 6

limitations that the person would be unreliable, unable to work sometimes for whole days or part of a day and miss two or more days per month, the VE testified that such a person could not maintain competitive employment.

In response to a hypothetical posed by Plaintiff's attorney, the VE testified that the need to take unforeseeable breaks of fifteen to twenty minutes during the work day would have a significant impact on an individual's ability to perform the jobs mentioned. The VE also testified that moderate limitations on the ability to concentrate or persist would have an impact on, but not eliminate all, housekeeper jobs.

The VE also testified that the housekeeper position did not involve hazards such as heights and fast moving machinery. Finally, the VE testified that, because homeowners are not usually at home and hotel occupants are not present during housekeeping services, public contact would be infrequent and limited.

## ALJ's Decision

At the first step of his disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 31, 2000, the date of the alleged onset of her disability.

At the second step, the ALJ found that Plaintiff's severe impairments included fibromyalgia, a depressive disorder, an anxiety-related disorder, a pain/somatoform disorder, and a substance abuse disorder.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1.

The ALJ next assessed Plaintiff's residual functional capacity (RFC). He found that Plaintiff retained the residual functional capacity

> to perform light work (with medium lifting) except claimant is limited to simple, routine work; to occasional interaction with the public and coworkers; and to no exposure to hazards such as heights or moving equipment (such as forklifts).

In assessing Plaintiff's RFC, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible.

At the fourth step, the ALJ found that Plaintiff could perform her past relevant work as a housecleaner. This conclusion made it unnecessary for the ALJ to reach the issue of whether Plaintiff could perform "other work." Based on his conclusions, the ALJ found that Plaintiff was not disabled within the meaning of the Act.

### Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends that the ALJ erred by not including in his RFC assessment all of the restrictions found by the DDS physician and in failing to include all of those restrictions in the vocational hypothetical he posed to the Vocational Expert (VE).  Plaintiff also contends that the ALJ failed to fully develop the administrative record.

I. **ALJ's RFC**

The ALJ is responsible for determining a claimant's residual functional capacity. 20 C.F.R. § 404.1546; SSR 96-5p.  In doing so, the ALJ is required to consider the record as a whole, and to explain the weighing of the medical evidence and testimony concerning the claimant's residual functional capacity. SSR 96–5p.  In analyzing a claimant's residual functional capacity, an ALJ may consider whether a claimant's subjective complaints lack credibility, Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005), and need not include opinion evidence that is properly discounted.  Batson v. Commissioner of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004).

Plaintiff contends that ALJ Tielens erred in determining her RFC by failing to incorporate restrictions set forth in the opinion of DDS physician Dorothy Anderson, PhD. and affirmed by State reviewing physician Robert Henry, PhD.  Specifically, Plaintiff argues that the

ALJ should have incorporated limitations that Plaintiff needed to work in an environment that was not "team based" and that only included "brief" and occasional contact with the public.

This argument is unpersuasive. ALJ Tielens did not fail to incorporate the limitations described above. At the September 2007 hearing, the ALJ posed to the VE a hypothetical describing an individual who "should only have occasional public interaction; and similarly, only occasional co-worker interaction." The ALJ, in subsequent discussion with Plaintiff's counsel and the VE, specifically noted Dr. Anderson's comments regarding a team-based work environment and brief public contact and then stated "those limitations were evaluated by . . . the psychologist who equated to those kind of work restrictions, which is what I tried to give." The RFC ultimately determined by the ALJ required that Plaintiff be able to:

> perform light work (with medium lifting) except claimant is limited to simple, routine work; to *occasional interaction with the public and coworkers*; and to no exposure to hazards such as heights or moving equipment (such as forklifts).

(Emphasis added). Clearly, the ALJ acknowledged, considered and accounted for the limitations set forth in Dr. Anderson's opinion. While Dr. Anderson's words do not appear verbatim in the RFC, "occasional interaction with the public and coworkers" adequately expresses restrictions to no team-based work and only brief, occasional public contact. The ALJ's assessment of Plaintiff's limitations was based upon substantial evidence, and did not reflect legal error.

II. **Adequacy of the ALJ's Vocational Hypothetical**

To constitute substantial evidence for a disability determination, an ALJ's hypothetical to a VE must set out all of the claimant's limitations. Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). The ALJ's depiction of the claimant's limitations must be "accurate, detailed, and supported by the medical record." Id. The ALJ must only include those limitations supported by substantial evidence. Robbins v. Social Security Admin., 466 F. 3d 880, 886 (9th Cir. 2006).

FINDINGS AND RECOMMENDATION – 10

Plaintiff contends that the hypothetical that ALJ Tielens posed to the VE was incomplete because it failed to include limitations to work that was not "team based" and that only included "brief" and occasional interaction with the public. I disagree. As discussed above, ALJ Tielens' hypothetical and RFC determination accounted for and articulated the limitations suggested by Dr. Anderson. Under these circumstances, the VE's testimony that an individual with Plaintiff's residual functional capacity could perform her past relevant work as a housekeeper had evidentiary value and constitutes substantial evidence for the ALJ's finding that Plaintiff was not disabled within the meaning of the Act.

### III. **Development of the Record**

An ALJ has a duty to help develop the record. Armstrong v. Commissioner, 160 F.3d 587, 589 (9th Cir. 1998); 20 C.F.R. §§ 404.1512(d)-(f). However, the duty to "'conduct an appropriate inquiry'" is triggered only where the record contains "[a]mbiguous evidence" or the ALJ has found "the record is inadequate to allow for proper evaluation of the evidence." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). An ALJ generally has broad discretion to determine when a consultative examination is needed. Reed v. Massanari, 270 F.3d 838, 842 (9th Cir. 2001). Such an examination is necessary only if the evidence as a whole is not sufficient to support a decision on a claim of disability. 20 C.F.R. § 404.1519a(b).

Plaintiff argues that the ALJ should have further developed the record regarding "pancreatitis with residual nausea and pain when digesting food; status-post heart attack and stent placement with residual breathlessness, dizziness, and nausea when attempting to perform chores and chronic fatigue; mental confusion as a side effect from medicine; and because of medicine, frequent stomach cramping and need to use the restroom without notice."

Plaintiff contends that because these symptoms did not appear until later in 2005 and the last DDS physician review of Plaintiff's record occurred in April of 2005, the ALJ erred in not obtaining evidence about these "significant impairments" and how they impacted Plaintiff's ability to work.  Plaintiff argues that the ALJ incorrectly concluded, without evidence, that these impairments were non-severe and "rejected any symptoms related to the impairments, or any related work restrictions."

The record here does not support Plaintiff's contentions.  ALJ Tielens included in his decision specific references to the extensive medical record covering September 2005 to August 2007.  The medical evidence included test results, progress notes and the opinions of treating physicians.  After reviewing the medical record, the ALJ found that there was no clear evidence that there were continuous symptoms related to Plaintiff's pancreatitis and coronary artery disease that had lasted the 12 months that is required to establish disability under the Act.  See 20 C.F.R. §§404.1509 and 416.909.  He therefore concluded that these conditions were not severe medically determinable impairments.

The ALJ also referenced Plaintiff's testimony at the hearing and pointed to several inconsistencies between Plaintiff's reported symptoms and both the medical record and Plaintiff's work history.   As noted above, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible.  Plaintiff has not challenged that finding.

Under these circumstances, the evidence concerning the period relevant to the ALJ's decision was neither ambiguous nor inadequate to allow for proper evaluation of the evidence.  The ALJ was not required to seek further information or to request an additional consultative examination.

FINDINGS AND RECOMMENDATION – 12

## Conclusion

A judgment should be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

## Scheduling Order

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due June 21, 2012. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 4th day June, 2012.

/s/ John Jelderks
John Jelderks
U.S. Magistrate Judge

FINDINGS AND RECOMMENDATION – 13